**MENDES JUNIOR INTERNATIONAL COMPANY, Plaintiff–Appellant,**

v.

**BANCO DO BRASIL, S.A. and BB– Leasing Company, Defendants– Appellees.**

**Docket No. 99–7639**

United States Court of Appeals, Second Circuit.

Argued Feb. 16, 2000

Final submissions Feb. 23, 2000

Decided June 16, 2000

Michael Lesch, New York, New York (Stephen H. Orel, Geoffrey H. Coll, Le-Boeuf, Lamb, Greene & MacRae, New York, New York, on the brief), for Plaintiff–Appellant.

Francis S.L. Wang, San Francisco, California (Michael Welch, Wang & Wang, San Francisco, California, on the brief), for Defendants-Appellees.

Before: KEARSE, WALKER, and POOLER, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Mendes Junior International Company ("Mendes") seeks review of a

final judgment entered in the United States District Court for the Southern District of New York on July 2, 1998 ("July 2, 1998 Judgment"), Robert L. Carter, *Judge,* dismissing its complaint for declaratory and monetary relief from defendant Banco do Brasil, S.A. ("Banco"), and BB–Leasing Company ("BB–Leasing"), for breach of contract, estoppel, and breaches of various duties under New York law. The district court granted defendants' motion to dismiss the complaint on the ground of forum non conveniens, noting, *inter alia,* that Mendes is a Cayman Islands corporation whose principal place of business is in Brazil, that Banco is a Brazilian corporation whose principal place of business is in Brazil, that BB–Leasing is a subsidiary of Banco, and that the controversy arises out of Banco's financing of Mendes construction projects in Iraq. *See* 15 F.Supp.2d 332 (S.D.N.Y.1998). On appeal, Mendes contends principally that the district court abused its discretion in weighing the factors on which a forum non conveniens decision is to be based. If we were to reach the merits of the appeal, we would affirm substantially for the reasons stated in the district court's opinion. However, for the reasons that follow, we conclude that there was no valid extension of Mendes's time to appeal from the July 2, 1998 Judgment and that its notice of appeal, filed May 28, 1999, was therefore untimely. We accordingly dismiss the appeal for lack of appellate jurisdiction.

## I. BACKGROUND

Beginning in the 1970s, Mendes, in a joint venture with a subsidiary of a Brazilian government-owned oil company, entered into construction contracts with the government of Iraq in which Mendes's services were, in part, bartered for Iraqi oil in order to help Brazil meet its oil needs and alleviate its currency problems. Mendes obtained financing from Banco, a commercial bank whose majority owner is the government of Brazil; Banco later refinanced Mendes's debts through a sale and lease-back transaction with Banco subsidiary BB–Leasing, a Cayman Islands corporation that has offices in New York. In another refinancing, Mendes obtained additional loans from Banco, which required Mendes to obtain a special war-risk insurance policy from Instituto de Resseguros do Brasil ("IRB"), which is majority-owned by the Brazilian government, to repay Banco if Mendes were unable to do so. Mendes also assigned its payment claims against Iraq to Banco.

Following Iraq's invasion of Kuwait in 1990 and the ensuing United Nations embargo, neither Mendes nor Banco was able to obtain payment for Mendes's services from the government of Iraq. Mendes brought the present action against Banco and BB–Leasing in New York state court, alleging that Banco had defaulted on its obligations to collect from IRB or from the government of Iraq on behalf of Mendes. Banco, invoking its status as an agency or instrumentality of the Brazilian government, removed the action to federal court, premising jurisdiction on the Foreign Sovereign Immunities Act, *see* 28 U.S.C. §§ 1441(d), 1603 (1994). Defendants then moved to dismiss for lack of personal and subject matter jurisdiction, failure to state a claim on which relief can be granted, and forum non conveniens.

In an opinion dated June 29, 1998, and reported at 15 F.Supp.2d 332, familiarity with which is assumed, the district court granted Mendes's motion to dismiss on the ground of forum non conveniens. Weighing the factors set forth in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the court found, *inter alia,* that private-interest factors did not particularly favor either side; but it concluded that public-interest factors weighed heavily in favor of having the action tried in Brazil rather than in New York, especially given that Banco is an agency of the Brazilian government, and that the Brazilian government had "promoted and engineered Mendes['s] relationship with Iraq in order to secure a reliable

source of oil imports," 15 F.Supp.2d at 340; *see also id.* ("The Brazilian government even negotiated directly with Iraq when difficulties arose in Mendes['s] performance of the original contract."). The court provided that the dismissal could be set aside if Brazil proved unwilling to accept jurisdiction over Mendes's claims or if defendants refused to waive jurisdictional defenses and any statute-of-limitations defense not available to them when Mendes commenced the present action.

Final judgment dismissing the action was entered on July 2, 1998. There followed a series of postjudgment motions for substantive and procedural relief.

### A. *The Postjudgment Motions and Orders*

On July 15, 1998, Mendes wrote to the district court requesting, *inter alia,* a stay of its time to appeal and an extension of its time to move for reconsideration. In an order entered on July 23, 1998 ("July 23, 1998 Order"), the court granted those motions as follows:

> Upon the application of plaintiff, as contained in the letter dated July 15, 1998 from Michael Lesch, Esq., for an extension of time to move to reconsider the Court's order dated June 29, 1998, docketed by the Clerk on July 1 [*sic* ], 1998, that granted defendants' motion to dismiss; . . . and for a stay of plaintiff's time to appeal; it is hereby

> ORDERED that the time for plaintiff to serve a motion to reconsider is extended to August 11, 1998; and it is further

> . . . . .

> ORDERED that pursuant to Fed. R.App. P. 4(a)(5), the time for plaintiff to file a notice of appeal from this Court's order dismissing the complaint is stayed until the later of August 11, 1998 or thirty days after determination of plaintiff's motion to reconsider.

On August 11, 1998, Mendes filed its motion pursuant to Rule 6.3 of the Local Rules for the Southern District ("Local Rule 6.3") for reconsideration of the dismissal of the complaint.

In the meantime, on July 16, 1998, Banco had filed a motion seeking an award of attorneys' fees from Mendes, based on a loan agreement provision. On September 29, 1998, Mendes sent the district court a letter noting the pendency of Mendes's and Banco's respective motions for reconsideration and attorneys' fees, and requesting

> [f]or the sake of efficiency, and the prevention of needless multiple appeals . . . that the Court enter an order pursuant to Fed.R.Civ.P. 58 that treats the motion for attorneys' fees as having been filed under Rule 54(d)(2), which applies to post-judgment motions for attorneys' fees, and that said motion has [*sic* ] "the same effect under Rule 4(a)(4) of the Federal Rules of Appellate Procedure as a timely motion under Rule 59."

(Letter from Michael Lesch, Esq., to Judge Robert L. Carter, dated September 29, 1998, at 1 (quoting Fed.R.Civ.P. 58).) In response, the court issued an order dated September 30, 1998 ("September 30, 1998 Order"), stating as follows:

> In light of the judgment of the court, entered July 2, 1998, and the pendency of both plaintiff's motion for reconsideration, served August 11, 1998, and of defendants' motion for attorneys' fees, filed July 16, 1998; and further in light of the fact that defendants' motion for attorneys' fees was timely filed pursuant to Fed.R.Civ.P. 54(d)(2); and good cause shown, it is hereby

> ORDERED that pursuant to Fed R. Civ. P. 58, defendants' motion for attorneys' fees have the same effect under Fed. R.App. P. 4(a)(4) as a timely motion under Rule 59.

By order dated April 19, 1999, the district court denied Mendes's motion for reconsideration. By order dated May 3, 1999, the district court denied Banco's motion for attorneys' fees.

## B. *The Appeal*

The final judgment having been entered on July 2, 1998, Mendes's time to appeal would ordinarily have expired on August 3, 1998. *See* Fed. R.App. P. 4(a)(1) (fixing a 30–day period in which to appeal in a civil case in which the federal government is not a party); Fed. R.App. P. 26(a) (when last day of the period falls on a Saturday, a Sunday, or a legal holiday, the period ends instead on the next business day that is not a Saturday, Sunday, or legal holiday). Mendes filed its notice of appeal on May 28, 1999.

■ At oral argument of the appeal, this Court raised questions with respect to appellate jurisdiction. Our concerns centered principally on whether the district court's July 23, 1998 Order could expand the normal 30–day period for appeal by extending Mendes's time to move for reconsideration; and, if not, with the consequence that Mendes's appeal time expired on August 3, 1998, whether the court could revive Mendes's time to appeal by means of the September 30, 1998 Order. Since the time limit for filing a notice of appeal is " ' "mandatory and jurisdictional," ' " *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 61, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) (per curiam) (quoting *Browder v. Director, Department of Corrections*, 434 U.S. 257, 264, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978) (quoting *United States v. Robinson*, 361 U.S. 220, 229, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960))), we asked the parties to file supplemental briefs addressing the matter of whether any post-judgment motion or order validly extended Mendes's time to appeal from the July 2, 1998 Judgment.

■ In response, Mendes has taken the position that its appeal from the July 2, 1998 Judgment is timely because of the district court's September 30, 1998 Order, which ordered that defendants' fee motion have the same effect under Fed. R.App. P. 4(a)(4) as a timely motion under Fed. R.Civ.P. 59. We reject this contention.

For the reasons that follow, we do not interpret the rules of procedure as allowing the court to revive a losing party's right to appeal after both the original appeal period and the permissible grace period have expired, and we thus conclude that Mendes's appeal from the July 2, 1998 Judgment is untimely.

## II. DISCUSSION

■ Preliminarily, we note that, in light of the intertwined provisions of the Federal Rules of Civil Procedure ("Civil Rules" or "Rules") and the Federal Rules of Appellate Procedure ("FRAP Rules"), Mendes was well-advised not to premise a timeliness argument on the granting of its request for an extension of time to move for reconsideration. As recently discussed in *Lichtenberg v. Besicorp Group Inc.*, 204 F.3d 397, 401 (2d Cir.2000), a motion to alter or amend a judgment may be made under Civil Rule 59 within 10 days after entry of judgment, *see* Fed.R.Civ.P. 59(e), and a party's time to appeal from the judgment does not expire before that motion is decided, *see* Fed. R.App. P. 4(a)(4); but, except in circumstances not applicable here, the Rules do not allow the court to grant an extension of time for making the Rule 59 motion itself, *see* Fed.R.Civ.P. 6(b) (district court "may not extend the time for taking any action under [Civil] Rules 50(b) and (c)(2), 52(b), 59(b), (d) and (e), and 60(b), except to the extent and under the conditions stated in them"); *see also Lichtenberg v. Besicorp Group Inc.*, 204 F.3d at 403–04 (Civil Rule 6(b) does not prohibit an extension of the time to move for reconsideration pursuant to Local Rule 6.3, but a motion under Local Rule 6.3 does not extend the time to appeal). Thus, the July 23, 1998 Order, while permissibly extending Mendes's time to move for reconsideration under Local Rule 6.3, did not expand Mendes's time to file a motion under a Rule that would automatically have extended its time to appeal.

■ Further, although the July 23, 1998 Order provided that "pursuant to Fed.

R.App. P. 4(a)(5)" Mendes's time to file a notice of appeal was "stayed until . . . thirty days after determination of [Mendes's] motion to reconsider," the order could not, in this case, have that effect. The power of the federal courts to extend the time limits on the invocation of appellate jurisdiction is severely circumscribed. Pursuant to FRAP Rule 4(a)(5), a district court may, on a showing of good cause or excusable neglect, extend the appeal period for up to 30 days from the original deadline or until 10 days after the date of entry of the order granting the motion, whichever is later; but the court may not extend this grace period further, for that Rule also provides that

> [n]o extension under this Rule 4(a)(5) may exceed 30 days after the prescribed time or 10 days after the date when the order granting the motion [for extension of time] is entered, whichever is later,

Rule 4(a)(5)(C); *see, e.g., Matarese v. Le-Fevre,* 801 F.2d 98, 104–05 (2d Cir.1986), *cert. denied,* 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987); *Moore v. Nelson,* 611 F.2d 434, 436 n. 4 (2d Cir.1979); *In re Orbitec Corp.,* 520 F.2d 358, 361 (2d Cir. 1975); *see also Cohen v. Empire Blue Cross & Blue Shield,* 142 F.3d 116, 118 (2d Cir.1998) (court lacks jurisdiction to entertain a motion for an extension if the motion is made more than 30 days after expiration of the deadline to appeal). Thus, even assuming that Mendes made a showing of good cause for an extension, the latest date to which the July 23, 1998 Order could extend Mendes's appeal deadline was September 2, 1998, *i.e.,* 30 days after the original August 3, 1998 deadline. Since, as it turned out, Mendes's reconsideration motion was not decided until April 1999, the July 23, 1998 Order was ineffective to stay Mendes's appeal time until after determination of that motion.

■ In sum, we see in the record no postjudgment motion or order either prior to or within 30 days after the original August 3 appeal deadline that was effective to interrupt the running of Mendes's time to appeal. Since Mendes did not file a notice of appeal before that deadline or before the end of the maximum permissible grace period, its right to appeal expired no later than September 2, 1998. We turn, therefore, to the question of whether the September 30, 1998 Order, which invoked Civil Rule 58, was effective to revive that right to appeal.

■ Rule 58, as amended in 1993, provides that the entry of a final judgment normally is not to be delayed for a determination as to whether there should be an award of attorneys' fees

> except that, when a timely motion for attorneys' fees is made under [Civil] Rule 54(d)(2), the court, before a notice of appeal has been filed and has become effective, may order that the motion have the same effect under Rule 4(a)(4) of the Federal Rules of Appellate Procedure as a timely motion under [Civil] Rule 59.

Fed.R.Civ.P. 58. A motion for attorneys' fees, to be timely under Civil Rule 54(d)(2), must generally be served and filed no later than 14 days after the entry of judgment. *See* Fed.R.Civ.P. 54(d)(2)(B). FRAP Rule 4(a)(4), referred to in Rule 58, provides, in pertinent part, that "[i]f a party timely files in the district court" a motion "for attorney's fees under Rule 54 if the district court extends the time to appeal under Rule 58," or a motion "to alter or amend the judgment under Rule 59," or a motion under any of the other Civil Rules specified in FRAP Rule 4(a)(4), then "the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion." Fed. R.App. P. 4(a)(4)(A).

■ Rule 58 expressly describes some of the temporal limitations on the district court's authority to order that a timely Rule 54 fee motion have the same effect as a timely motion under, for example, Rule 59 (which we will sometimes refer to as a "Rule 58/54/59 order"). For example, the phrase *"when* a timely mo-

tion for attorneys' fees is *made*," Fed. R.Civ.P. 58 (emphases added), indicates that a Rule 58/54/59 order cannot properly be entered prior to the filing of a fee motion. The phrase "*before* a notice of appeal has been filed and has become effective," *id.* (emphasis added), plainly means that if a notice of appeal has been filed and is effective, such an order cannot properly be entered. When a timely notice of appeal and timely Rule 54(d)(2) and Rule 59 motions have been filed, if the Rule 59 motion (or other timely motion specified in FRAP Rule 4(a)(4)) has not yet been decided, the notice of appeal is not effective but "becomes effective … when the order disposing of the last such remaining motion is entered," Fed. R.App. P. 4(a)(4)(B)(i). Thus, during the pendency of a timely filed Rule 59 motion the court could enter a Rule 58/54/59 order.

▇ Rule 58 does not expressly state that, if the court elects to enter a Rule 58/54/59 order, the order must be entered prior to the expiration of the appeal periods specified in FRAP Rule 4(a)(1) (the original period) and 4(a)(5) (the grace period); and Mendes contends that, because Rule 58 does not state that the order cannot be filed after the time to appeal has expired, the district court has the power to enter such an order whenever a notice of appeal has not been filed. We conclude that this interpretation is contraindicated by the language of Rule 58, is contrary to the purpose of allowing the court to cause a Rule 54(d)(2) motion to delay the merits appeal, and is inimical to the sanctity of final judgments, which the strict deadlines imposed by FRAP 4(a) are designed to protect.

First, although the language of Rule 58 could be clearer in this regard, we think the drafters, by stating that any Rule 58/54/59 order must be entered "*before* a notice of appeal … has become effective" (emphasis added), meant that such an order may be entered only while there exists the possibility, under the provisions governing appellate jurisdiction, that a notice

of appeal from the judgment could become effective. If the event that such an order is required to precede cannot validly occur, temporal prioritization is meaningless. And if, as Mendes would have us hold, the drafters meant that a Rule 58/54/59 order itself would have the effect of reviving an already expired right to appeal, we surely would have expected Rule 58 or FRAP Rule 4(a) to state that effect with some clarity. The Rule 58 reference to a period "before" the notice of appeal "become[s] effective" seems clearly designed to accommodate the provision of FRAP Rule 4(a)(4)(B), quoted above, as to when, after the timely filing of motion that automatically suspends the finality of the judgment, a previously filed notice of appeal "becomes effective." We see nothing to indicate that a Rule 58/54/59 order was authorized to revive a forgone right to appeal. The language of Rule 58 is more compatible with the conclusion that a Rule 58/54/59 order is to be entered, if at all, while there remains the possibility that a notice of appeal from the judgment, independent of any Rule 58/54/59 order, *could* at some point become effective.

Second, the 1993 introduction of the Rule 58 provision giving the district court discretion to enter a Rule 58/54/59 order was intended simply to increase judicial efficiency by allowing an appeal from a decision on attorneys' fees to be coordinated with the appeal from the judgment. Thus, the drafters stated that although in some cases the district court might prefer to address requests for attorneys' fees only after the merits of the underlying judgment have been reviewed,

in many cases it may be more efficient to decide fee questions before an appeal is taken *so that appeals relating to the fee award can be heard at the same time as appeals relating to the merits of the case.* This revision permits, but does not require, the court to delay the finality of the judgment for appellate purposes under revised Fed.R.App.P. 4(a) until the fee dispute is decided.

Fed.R.Civ.P. 58 Advisory Committee Note (1993) (emphasis added). Where, however, the party aggrieved by the judgment has failed to file a timely notice of appeal within the original period established by FRAP Rule 4(a)(1) and has failed even to timely move for an authorized extension, there is no efficiency to be achieved by entering a Rule 58/54/59 order. Assuming that a Rule 58/54/59 order cannot resuscitate an expired right to appeal, there will be no merits appeal with which an appeal from a fee decision should be coordinated. And if a Rule 58/54/59 order could revive the losing party's expired right to appeal, the work of the courts could only be increased rather than expedited.

 Third, acceptance of Mendes's contention that a Rule 58/54/59 order can revive an expired right to appeal would subvert the "certainty and stability which have hitherto been considered of first importance in the appellate practice of the federal courts," *Hill v. Hawes,* 320 U.S. 520, 524, 64 S.Ct. 334, 88 L.Ed. 283 (1944) (Stone, C.J., dissenting), which are reflected in the strictness of the FRAP appeal time limitations.

> The Supreme Court has repeatedly underscored the sanctity of final judgments in our federal judicial system. "Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Baldwin v. Iowa State Traveling Men's Assoc.,* 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931).

*Sargent v. Columbia Forest Products, Inc.,* 75 F.3d 86, 89 (2d Cir.1996). Accordingly,

> [i]n the federal courts there is no right to appeal save as it is granted by Congress or a rule of court which is authorized by Congress and has the force of law. . . . *It is in the public interest, and it is the very purpose of limiting the period for appeal, to set a definite and ascertainable point of time when litiga-*

> *tion shall be at an end unless within that time application for appeal has been made; and if it has not, to advise prospective appellees that they are freed of the appellant's demands.*

*Hill v. Hawes,* 320 U.S. at 525, 64 S.Ct. 334 (Stone, C.J., dissenting) (emphasis added). In *Hill v. Hawes,* the Court ruled that where the clerk of court had failed to give notice of the entry of judgment the court could, after expiration of the appeal time, vacate and reenter its judgment without substantive change in order to revive the losing party's right to appeal. The dissent pointed out that allowing the courts, directly or indirectly, to interfere with the finality of a judgment would mean that "the law which limits the time within which an appeal can be taken would be a dead letter," *id.* at 526, 64 S.Ct. 334, and that a prevailing litigant would be deprived of any certainty that its judgment was no longer subject to appeal. These concerns for the sanctity of a judgment after the appeal time has expired are reflected in FRAP Rule 4(a)(5)'s strict limitation on the grace period that the court may allow:

> The provisions in [FRAP] Rule 4(a) and (b) respecting the grant of extensions after the expiration of the original appeal periods were originally developed in response to the Supreme Court's decision in Hill v. Hawes. . . . [B]y limiting the extension to 30 days, the framers of the predecessors of Rule 4(a) and (b) met the objection of the dissenters in Hill v. Hawes that granting such relief *at any time* after entry of judgment would disturb the finality doctrine.

16A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3950.3, at 136 n. 5 (1999) (emphasis added).

The same concerns apply to a Rule 58/54/59 order. If a district court before which a fee motion was pending had the authority at any time prior to the filing of any notice of appeal to enter an order that revived the losing party's lapsed right to appeal, the prevailing party would have no assurance, no matter how long its fee mo-

tion remained pending, that the losing party's failure to file a notice of appeal within the time allowed made the judgment impervious to appeal. In the present case, for example, the district court, apparently not recalling that it had entered a Rule 58/54/59 order on September 30, 1998, entered an identical order on April 20, 1999. Under the theory advocated by Mendes, even the April 20 order alone would have revived Mendes's right to appeal and imperiled the judgment, more than eight months after Mendes's time to appeal expired.

It is also noteworthy that the district court has authority under Rule 54(d)(2) to extend the time for making a fee motion, for the 14-day deadline applies "[u]nless otherwise provided by statute or order of the court." Fed.R.Civ.P. 54(d)(2)(B). Thus, under Mendes's construction, the entry of a final judgment could be followed by months of inaction, terminating the losing party's right to appeal; but if the court thereafter allowed the filing of a fee motion, the court could, at any time prior to deciding that motion, resuscitate the losing party's ability to appeal the judgment on the merits.

In sum, we conclude that Mendes's interpretation of Rule 58 as authorizing the district court to revive an expired time to appeal is contrary to the implications and purposes of the Civil and FRAP Rules. Accordingly, the district court's September 30, 1998 Order, entered four weeks after the latest date to which Mendes's appeal time could have been extended, was ineffective to revive Mendes's time to appeal from the final judgment.

Finally, although enforcement of the strict federal appeal deadlines may be relaxed in the "'unique circumstance[ ]'" in which "a party has performed an act which, if properly done, would postpone the deadline for filing his appeal and has received specific assurance by a judicial officer that this act has been properly done," *Osterneck v. Ernst & Whinney*, 489

U.S. 169, 178–79, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989) (quoting *Thompson v. INS*, 375 U.S. 384, 387, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964) (per curiam)), Mendes has not argued that that principle is applicable to it, and we see no predicates for its application here. Mendes performed no act that, if properly done, would have postponed its appeal deadline. Nor did the district court give Mendes any assurance that any such act had been done.

## CONCLUSION

We have considered all of Mendes's arguments in support of appellate jurisdiction and, for the reasons discussed stated above, have found them to be without merit. The appeal is dismissed.