**R. MAGANLAL & COMPANY,**
**Plaintiff–Appellant,**

v.

**M.G. CHEMICAL COMPANY,**
**INC., Defendant–Appellee.**

**No. 1658, Docket 91–7085.**

United States Court of Appeals,
Second Circuit.

Argued June 5, 1991.

Decided August 19, 1991.

Sebastiano M. Bio, New York City (Picillo Bromberg Caruso, Fairfield, N.J.; Howard Hackman, Columbus, Ohio; Manlio DePreta, O'Donnell & Schwartz, New York City, of counsel), for plaintiff-appellant.

Spencer Webber Waller, Brooklyn, N.Y., for defendant-appellee.

Before OAKES, Chief Judge, and PRATT and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Plaintiff-appellant R. Maganlal & Company ("Maganlal"), an Indian export trading company, appeals from a judgment of the United States District Court for the Southern District of New York (Mary Johnson Lowe, *Judge*) dismissing on grounds of forum non conveniens Maganlal's breach of contract action against defendant-appellee M.G. Chemical Company, Inc. ("MG"). Maganlal brought the underlying action claiming that goods purchased from MG, a New York corporation, and delivered to Maganlal in India, were of inferior quality and did not conform to the contract's specifications.

MG moved to dismiss the complaint, arguing that India was a more convenient forum. MG contended, and the district court agreed, that an issue of central importance in the case was whether Maganlal's import licenses, which were apparently issued by the Indian government and governed by Indian law, permitted the importation of the goods Maganlal had purchased from MG. Because resolution of this issue would require application of Indian law and access to witnesses in India, the district court granted MG's motion and dismissed the case.

Maganlal appeals from this judgment of dismissal. On appeal, Maganlal argues that the district court clearly erred in finding that issues of foreign law and access to foreign witnesses would so dominate the action as to make trial in the Southern District, Maganlal's chosen forum, inappropriate. According to Maganlal, the fundamental issue in the case, regarding both MG's liability and Maganlal's entitlement to damages, was whether the goods conformed to the contract, not whether the goods were covered by Maganlal's import documents. Maganlal contends that because the district court placed undue emphasis on the "import" issue, the court improperly weighed the private and public interest factors set forth in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947), and therefore abused its discretion in dismissing the case on grounds of forum non conveniens.

For the reasons set forth below, we reverse the judgment of the district court and remand the case for further proceedings.

## BACKGROUND

In September 1987, plaintiff-appellant Maganlal contracted with defendant-appellee MG to purchase approximately 200 metric tons of low density polyethelene ("LDPE"), an intermediate stage plastic used in the manufacture of plastic film. The LDPE, which apparently was to be manufactured by DuPont, a Delaware corporation, was to be delivered to Maganlal in India. The contract was negotiated and signed in New York on behalf of Maganlal

by Maganlal's agent, Kanu Patel. After the contract was negotiated, Maganlal arranged for an irrevocable letter of credit in the amount of $171,383.69 to be established in favor of MG. The letter of credit identified the product to be purchased as LDPE "natural virgin film." Subsequently, the letter of credit was amended to indicate, in conformity with MG's invoice, that the LDPE was "off-spec," *i.e.*, LDPE that did not meet industry standards as prime material.

The LDPE ultimately was shipped to India from Houston, Texas and, the district court found, MG was paid pursuant to the letter of credit. Upon the goods' arrival at the Indian port of Kandla in January 1988, Indian customs inspectors inspected the goods and found them to be wet, possibly contaminated with foreign matter and not in conformity with the description of the goods in the import documents. Maganlal contacted MG and rejected the goods, claiming that the goods did not conform to the contract. MG did not respond to the rejection letter. Shortly thereafter, Maganlal arranged for the goods to be examined by two private entities, including the Bombay agent of Lloyd's of London ("Lloyd's"). Lloyd's agent observed that between 90 and 95% of the goods were either wet, discolored or contained foreign material. Further, Lloyd's agent concluded that the "damage appears to have occured prior to shipping." In any event, based upon the customs authorities' examination of the LDPE, the goods were eventually confiscated in November 1988. According to the customs officials, the LDPE constituted "disposal goods" which could not be imported into India under Maganlal's import licenses. The record is not clear as to whether the basis of the authorities' action was that the LDPE was adulterated or that Maganlal's import documents simply did not permit the importation of "off-spec" goods.

Because MG failed to return Maganlal's payment, Maganlal commenced the underlying diversity action against MG in the United States District Court for the Southern District of New York in July 1988. Maganlal alleged that MG had breached their contract by sending non-conforming, worthless goods and sought monetary damages. MG served its answer in August 1988, denying Maganlal's allegations.

During a status conference in July 1989, MG's counsel moved to withdraw from the case. After some delay, new counsel was substituted in October 1989. Apparently, the issue of forum non conveniens was first discussed at the July status conference. After receiving an extension of time, MG's new counsel filed a motion to dismiss the action on the ground of forum non conveniens, contending that India was a more convenient forum for the litigation. MG's main argument, and its principal theory of defense, was that under Indian customs law, Maganlal's import documents did not permit the importation of the "off-spec" LDPE Maganlal had ordered, regardless of the condition of the goods. According to MG, it was the requirements of Indian law, and not the quality of the "off-spec" LDPE, that caused Maganlal's loss. To prevail on its defense, MG claimed that it needed access to witnesses in India. MG also contended that resolution of the "import" issue required an understanding and application of the Indian customs laws. Moreover, the allegedly adulterated LDPE was in storage in India, making testing difficult and expensive.

In response to MG's claims, Maganlal argued that whether the "off-spec" LDPE was covered by its import licenses was irrelevant to whether the LDPE conformed to the contract, and hence to whether MG was in breach. Moreover, Maganlal pointed out that the LDPE was manufactured in and shipped from the United States. As a result, Maganlal represented that all of its witnesses and documentary proof concerning the composition of the LDPE and its condition prior to shipment was in this country. The condition of the goods when shipped was relevant in light of Lloyd's agent's observation that the LDPE appeared to have been damaged prior to shipping. Maganlal further indicated that it could provide MG with samples of the LDPE for testing in the United States.

The district court granted MG's motion to dismiss. The court determined that there were two factual issues in the case: (1) whether the LDPE conformed to the contract specifications, and (2) whether Maganlal's import documents covered the importation of "off-spec" goods. In its analysis, the court discussed the relevant private and public interest factors set out in *Gilbert*, 330 U.S. at 508–09, 67 S.Ct. at 843, which must be weighed to determine whether dismissal on forum non conveniens grounds is proper. Regarding the issue of conformity, the court indicated that proof as to the conforming nature of the goods was not uniquely available in the United States. The court also noted that testing would require access to the goods in India. More importantly, the court reasoned that resolving the issue of whether Maganlal's import licenses covered the "off-spec" LDPE—an issue the court found to be of central importance to the case—required access to witnesses in India as well as the application of Indian law. Accordingly, the court determined that the balance of convenience weighed against trial in Maganlal's chosen forum and in favor of trial in India. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56, 102 S.Ct. 252, 265–66, 70 L.Ed.2d 419 (1981). The court therefore dismissed the case contingent upon MG submitting to the jurisdiction of the Indian courts and waiving any defenses under the statute of limitations. This appeal followed.

## DISCUSSION

A district court has broad discretion in deciding whether to dismiss an action on grounds of forum non conveniens. *See Piper Aircraft*, 454 U.S. at 257, 102 S.Ct. at 266–67; *see also Borden, Inc. v. Meiji Milk Products Co.*, 919 F.2d 822, 827 (2d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2259, 114 L.Ed.2d 712 (1991); *Irish Nat'l Ins. Co. v. Aer Lingus Teoranta*, 739 F.2d 90, 92 (2d Cir.1984). However, a court's discretion in this area is not so broad as to preclude meaningful appellate review of its decisions. *See Irish Nat'l*, 739 F.2d at 92; *Overseas Programming*

*Companies, Ltd. v. Cinematographische Commerz–Anstalt*, 684 F.2d 232 (2d Cir. 1982); *see also Overseas Nat'l Airways Inc. v. Cargolux Airlines Int'l, S.A.*, 712 F.2d 11, 15 (2d Cir.1983) (Oakes, J., concurring). "A meaningful power of review is the right to determine whether the district court reached an erroneous conclusion on either the facts or the law." *Irish Nat'l*, 739 F.2d at 92; *see also Reid–Walen v. Hansen*, 933 F.2d 1390, 1394, n. 4 (8th Cir.1991).

The central purpose of a forum non conveniens inquiry is to determine where trial will be most convenient and will serve the ends of justice. *See, e.g., Koster v. Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947). To prevail on a motion to dismiss based on forum non conveniens, a defendant must demonstrate that an adequate alternative forum exists and that, considering the relevant private and public interest factors set forth in *Gilbert*, 330 U.S. at 508–09, 67 S.Ct. at 843, the balance of convenience tilts strongly in favor of trial in the foreign forum. *See, e.g., Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir.1991); *Schertenleib v. Traum*, 589 F.2d 1156, 1159–60 (2d Cir.1978).

Ordinarily, a foreign forum will be adequate when the defendant is subject to the jurisdiction of that forum. *Piper Aircraft*, 454 U.S. at 254, n. 22, 102 S.Ct. at 265, n. 22; *Meiji Milk Products*, 919 F.2d at 828. Since MG has agreed to submit to the jurisdiction of the Indian courts as a condition of dismissal, and Maganlal, a resident of India, has not claimed that the Indian courts are otherwise inadequate, the district court did not err in concluding that India was an adequate forum. The central focus of this appeal is therefore whether the district court correctly balanced the relevant private and public interests in dismissing the case.

Because there is ordinarily a strong presumption in favor of plaintiff's choice of forum, that choice will not be overcome unless the relevant private and public interest factors weigh heavily in favor of trial in the alternative forum. *See*

*Piper Aircraft,* 454 U.S. at 255, 102 S.Ct. at 265–66; *Lacey,* 932 F.2d at 180; *see also* 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3828 at 291–92 (1986). Where, as here, the plaintiff is foreign, the plaintiff's choice of forum is entitled to less weight. *Piper Aircraft,* 454 U.S. at 255–56, 102 S.Ct. at 265–66. However, this reduced weight "is 'not an invitation to accord a foreign plaintiff's selection of an American forum *no* deference since dimissal for forum non conveniens is the exception rather than the rule.'" *Lacey v. Cessna Aircraft Co.,* 862 F.2d 38, 45–46 (3d Cir.1988) (quoting *In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147, 1164 n. 26 (5th Cir.1987) (en banc), *vacated on other grounds,* 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989)) (emphasis added in *Lacey* ); *see also Lony v. E.I. DuPont de Nemours & Co.,* 935 F.2d 604, 609 (3d Cir.1991). Accordingly, since a foreign plaintiff's choice of forum is entitled to some weight, a defendant must still show that the balance of convenience sufficiently favors trial in the foreign forum to overcome the presumption in favor of plaintiff's choice.

■■■ As set forth in *Gilbert,* private interests to be considered in deciding whether the balance of convenience favors trial in a foreign forum include "the ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining the attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* 330 U.S. at 508, 67 S.Ct. at 843. Public interest factors include administrative difficulties stemming from court congestion; the interest in having "localized controversies decided at home"; and the interest in having issues of foreign law decided by a foreign tribunal. *Id.* at 508–09, 67 S.Ct. at 843. On appeal, Maganlal contends that the district court clearly erred in balancing the *Gilbert* factors. Specifically, Maganlal argues that the court erroneously concluded that issues surrounding the scope of its import permits were of central importance to the case. According to Maganlal, this

error skewed the court's analysis of the relevant *Gilbert* factors. We agree.

Maganlal brought the underlying breach of contract action claiming that when the LDPE arrived in India, the goods were substandard and did not conform to the contract's specifications for "off-spec" LDPE. The fundamental issue in the case, regarding both MG's liability and Maganlal's entitlement to damages, is therefore whether the goods conform to the contract, not whether they are importable pursuant to Maganlal's import licenses. MG's performance under the contract would be discharged once conforming goods were delivered to India. As Maganlal admitted at oral argument, if the goods conform to the contract, it has no cause of action. Although the issue of whether the "off-spec" LDPE was covered by Maganlal's import licenses may be relevant to some of Maganlal's claimed damages in the event the goods do not conform to the contract, the issue is plainly of secondary importance. The district court therefore erred in concluding that issues of Indian law and access to witnesses in India were central to resolving the case. *See Overseas Programming,* 684 F.2d at 235. This error tainted the court's entire forum non conveniens analysis. Given the secondary importance of the "import" issue, the relevant private and public interests, when properly balanced, favor retention of the case in Maganlal's chosen forum.

In terms of access to proof and witnesses, essential factors in the forum non conveniens analysis, all of Maganlal's documentary evidence and witnesses on the issue of conformity are located in the United States. The LDPE for which the parties contracted was purportedly manufactured by DuPont, a Delaware corporation, and was shipped to India from Houston, Texas. Thus, evidence concerning the composition of the LDPE, as well as evidence concerning the condition of the goods prior to shipment, is located in the United States. Moreover, the locus of the LDPE industry, and hence evidence regarding general industry standards for "off-spec" LDPE, is in the United States. The fact that evidence regarding trade usage may not be uniquely available in this country is not

controlling, especially absent significant countervailing considerations. The only evidence not in this country on the conformity issue is the over 200 metric tons of LDPE, which is in India. While perhaps of legitimate concern to MG, this does not shift the balance against trial in New York, because samples of the LDPE can be obtained through discovery. *See* Fed. R.Civ.P. 34. Moreover, any testimony MG needs from witnesses whose attendance cannot be compelled can be obtained, for example, through the use of letters rogatory. *See Overseas Programming*, 684 F.2d at 235; *see also* Fed.R.Civ.P. 28(b). Therefore, while certain of MG's interests may favor trial in India, they are not sufficiently weighty to dislodge Maganlal from its chosen forum.

■ In regard to public interest factors, the district court focused on the need to have an Indian court resolve the issues of Indian customs law that it found to be at the heart of the controversy, *i.e.*, whether the "off-spec" LDPE constituted disposal goods not covered by its import documents.[1] As discussed above, this finding was clearly erroneous. Moreover, it is well-established that the need to apply foreign law is not alone sufficient to dismiss under the doctrine of forum non conveniens. *See, e.g., Piper Aircraft*, 454 U.S. at 260 n. 29, 102 S.Ct. at 268 n. 29; *Manu Int'l, S.A. v. Avon Products, Inc.*, 641 F.2d 62, 67–68 (2d Cir.1981). In addition, since the contract at issue was negotiated and signed in New York, and the party charged with breach, MG, is a New York corporation, New York has a significant interest in having this breach of contract action litigated in its courts. New York's interests outweigh any general interest India may have in ensuring that its citizens comply

with Indian customs laws. The public interests, like the private interests, do not favor dismissal.

In sum, because the district court erred in finding that issues of foreign law and access to foreign witnesses were central to deciding this case, it improperly weighed the *Gilbert* factors and abused its discretion in determining that MG had met its burden of demonstrating that trial in the Southern District of New York was inappropriate.

## CONCLUSION

Based on the foregoing, the judgment of the district court dismissing the action on grounds of forum non conveniens is reversed and the case is remanded for further proceedings.

---

1. In regard to the collateral issue of whether Maganlal's goods were within the scope of its import licenses, we note that the record on appeal contains a decision of the Custom's Excise Appellate and Gold (Control) Tribunal ("Tribunal"), an Indian administrative court, in an action stemming from the confiscation of Maganlal's goods by Indian customs authorities. The Tribunal's opinion indicates that after customs officials confiscated Maganlal's goods as "disposal goods" not covered by Maganlal's import licenses, Maganlal appealed the confiscation order to the Tribunal. The Tribunal held,

among other things, that "the charge that the goods were 'disposal goods,' not covered by the import license, has not been established" and thus that the customs authorities' order could not be sustained. Although the Tribunal rendered its decision approximately 10 months before the district court's decision in the instant action, the district court apparently was not made aware of that decision and did not refer to it in granting MG's motion to dismiss. We express no opinion at this time as to the effect of the Tribunal's decision on MG's defenses in the instant action.