GIAGUARO S.p.A. and Conserviera S.p.A., Plaintiffs,

v.

Francoise AMIGLIO, Defendant.

Civil Action No. CV–02–0807 (DGT).

United States District Court, E.D. New York.

April 22, 2003.

Bruno Cilio, Cilio & Partners P.C., New York City, for Plaintiffs.

Noel H. Kaplan, Lapatin Lewis Kaplan & Weissmeier, PLLC, New York City, Anthony P. Mennella, Staten Island, NY, for Defendant.

## OPINION

TRAGER, District Judge.

This lawsuit is one of a number of lawsuits arising from a series of transactions involving the purchase and sale of Italian canned peeled tomatoes. Plaintiffs, Giaguaro S.p.A. ("Giaguaro") and Conserviera S.p.A. ("Conserviera"), commenced this action against defendant, Francoise Amiglio ("Francoise"), alleging, *inter alia*, that, as payment for imported tomatoes, Francoise

issued checks to the order of a Canadian company, with instructions to endorse them in favor of the plaintiffs, which were drawn on the account of a non-existent corporation. Francoise seeks to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b) on the following grounds: (1) failure to plead fraud with particularity pursuant to Federal Rule of Civil Procedure 9(b); (2) *forum non conveniens*; (3) failure to join an indispensable party pursuant to Federal Rule of Civil Procedure 19; and (4) comity, collateral estoppel or res judicata. The background of this case is rather extensive and is set forth in some detail below.

## Background[1]

### (1)

■ Amko International Trading, Inc. ("Amko") is a New York corporation of which defendant's husband, Joseph Amiglio ("Amiglio"), is a shareholder. Amko is the importer and distributor of Italian food products, including canned peeled tomatoes. *See* Def.'s Mem. of Law in Supp. of her Motion to Dismiss the Compl. ("Def.'s Mem.") at 2. Giaguaro and Conserviera are both Italian exporters of canned peeled tomatoes. *See* Compl. ¶ 3.

Paesana Import–Export Inc. ("Paesana") is a Canadian company, which was formed to import the Italian tomatoes from Giaguaro and Conserviera. *See* Compl. ¶ 7. The European Community provides subsidies for transactions involving the export of goods from Italy to,

among other places, Canada. *See* Italian Compl. ¶ 4. To this end, when the tomatoes arrived in Canada, Amiglio and another Paesana shareholder, Gerard Lavallee ("Lavallee"), cleared the shipment through customs and issued the necessary customs certificates to Conserviera. *See* Italian Compl. ¶ 4. However, once Paesana received the canned tomatoes, it would ship them via the Port of Montreal to Amko in the United States. *See* Canadian Decision ¶¶ 6, 18. Notably, had Giaguaro and Conserviera shipped the tomatoes directly from Italy to Amko, the transaction would not have qualified for the European Community subsidy.

### (2)

At some point, the Italian government terminated the subsidies provided to Giaguaro and Conserviera for the exported tomatoes shipped to Paesana, alleging that the customs certificates provided to the government by those companies (and supplied by Amiglio and Lavallee) were false. *See* Italian Compl. ¶ 8. Accordingly, the Italian government requested a refund of all subsidies previously supplied to Giaguaro and Conserviera.

On March 20, 2000, Conserviera commenced a lawsuit against several defendants, including Paesana and Amiglio, in Florence, Italy. As intimated above, Amiglio and Lavallee are alleged to have issued false customs certificates to mislead people into thinking that the tomatoes had been delivered from Italy to Canada when,

---

1. The background of this case is taken from the complaint filed by plaintiffs in this case and complaints filed by the plaintiffs, among others, in cases brought in Florence, Italy and Montreal, Canada. *See* Affidavit of Noel H. Kaplan ("Kaplan Aff."), Ex. A ("Italian Compl."); *id.*, Ex. B ("Canadian Compl."). In addition, some facts are taken from the opinion of the Canadian Court of Appeal for the Province of Quebec, District of Montreal, issued on June 21, 2001. *See id.*, Ex. C ("Ca-

nadian Decision"). Lastly, some facts are taken from defendant's memorandum for the limited purpose of providing context. (It should be noted that plaintiffs' memorandum did not include a statement of facts.) This court may take judicial notice of the Canadian Complaint, Italian Complaint and Canadian Decision. *See Brass v. Am. Film Techs.*, 987 F.2d 142, 150 (2d Cir.1993) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991)).

in fact, the ultimate destination of the tomatoes was the United States. *See id.* ¶ 8. In the Italian lawsuit, Conserviera seeks to recover only the amount of the subsidies improperly received by Conserviera and compensation for damage to Conserviera and its sole administrator's reputation. *See id.* ¶ 9.

Shortly thereafter, on May 15, 2000, Giaguaro, Conserviera and another plaintiff (the "Canadian Plaintiffs") commenced a lawsuit against Amko, Paesana, Amiglio, Lavallee, Francoise and Michael Piscitelli, Amiglio's son-in-law ("Piscitelli"), in Montreal, Canada. In essence, the Canadian Plaintiffs allege that they entered into numerous contracts with Paesana for the sale of canned peeled tomatoes for which Paesana has failed to pay. *See* Canadian Compl. ¶ 1. According to the Canadian Plaintiffs, these contracts are governed by Italian law, *see id.*, but the purchase price of the tomatoes was to be paid in U.S. dollars. *See id.* ¶ 2. As partial payment for the tomatoes, the Canadian Plaintiffs allege that Amiglio had Francoise and Piscitelli "issue 33 cheques, payable to the order of 'Paesana' which endorsed them in favour of plaintiffs, 17 of which were returned unpaid and subsequently paid by 'Amiglio' while the remaining 16 cheques totalling U.S. $1,428,572.00 ... still remain unpaid." *Id.* ¶ 8. They also assert that Francoise and Piscitelli are personally liable for the amount of these sixteen unpaid checks because they were issued under the name of a non-existent company, "San Remo International Trading Inc." ("San Remo").[2] *Id.* Accordingly, the Canadian Plaintiffs seek to recover from Francoise and Piscitelli, "to the partial acquit of the other defendants," a total of U.S. $1,428,572.00. *Id.* at 5, "Condemning" paragraph 3.

With regard to the balance of money due, the Canadian Plaintiffs claim that Amiglio consistently promised them payment and that, if he had not so promised, the Canadian Plaintiffs would have stopped shipping the tomatoes or would have acted sooner to recover the debts. *See id.* ¶ 9. The Canadian Plaintiffs also assert that Amiglio controls Paesana and that it was really Amiglio, personally or through Amko, who was purchasing the tomatoes from the Canadian Plaintiffs. *See id.* ¶¶ 4–6. Accordingly, the Canadian Plaintiffs seek to recover from Paesana and Amiglio the remaining unpaid purchase price for tomatoes sold and delivered, totaling U.S. $3,267,091.00. *See id.* at 5, "Condemning" paragraph 1.

Lastly, like the Italian Complaint, the Canadian Complaint contains allegations about false customs certificates allegedly issued by Amiglio and Lavallee for the purpose of obtaining the European Community subsidy. *See id.* ¶¶ 10, 12, 13. In this regard, the Canadian Plaintiffs seek to recover from Paesana and Amko, and Lavallee and Amiglio, personally, the amount assessed by the Italian authorities, totaling U.S. $1,209,275.00. *See id.* at 5, "Condemning" paragraph 2.

Upon receiving the Canadian Complaint, Amko, Amiglio, Francoise and Piscitelli filed a motion for declinatory exception,[3] which was granted by the Superior Court, District of Montreal. *See* Canadian Decision ¶ 1. It appears that the motion was

---

**2.** At this point, it is worth noting that, according to defendant, Paesana paid plaintiffs with San Remo checks totalling $2,933,796.20 for goods not in dispute, which plaintiffs presented for payment and which later cleared the bank and were honored. *See* Def.'s Reply Mem. of Law in Supp. of her Motion to Dismiss the Compl. at 1 (citation omitted).

**3.** A declinatory exception is an objection to the court's jurisdiction. *See Black's Law Dictionary* 417 (7th Ed.1999).

grounded on *forum non conveniens* and *lis pendens*. The Canadian lawsuit was dismissed against these defendants, and the Canadian Plaintiffs appealed.

(3)

On June 21, 2001, the Canadian Court of Appeal for the Province of Quebec, District of Montreal, found that Amiglio and Amko are subject to the jurisdiction of the Canadian courts but that Francoise and Piscitelli are not. After discussing the bases under which a Quebec authority has jurisdiction over foreign nationals (an analysis of which the court stated requires "an examination of the individual situation of each of the Defendants"), the court found that if Amiglio is really Paesana's "alter ego" and Paesana is "but a veil," then the actions allegedly committed in Quebec, and the injuries attributable to those actions, tie Amiglio to Quebec and allow for jurisdiction of the Canadian courts. Canadian Decision ¶¶ 12–18. In this regard, the court emphasized the allegations against Amiglio, such as "the fictitious orders placed by Paesana, the re-routing of goods towards the United States through the Port of Montreal, not having obtained and supplied valid Canadian Customs certificates, as well as sending false documents in their place." *Id.* ¶ 18. The court also found Amko "a main player involved in the commission of the faults attributed to Amiglio and the injurious acts that occurred in Quebec" and, thus, also subject to jurisdiction in Canada. *Id.*

However, the court that found Francoise and Piscitelli's situation "is in many ways different from that of" Amiglio and Amko. *Id.* ¶ 19. Indeed, the court noted that the only allegations against Francoise and Piscitelli concern "their involvement with the cheques that [they] are alleged to have written out in the name of San Remo Trading International Inc., a fictitious company." *Id.* Since the allegations against Francoise and Piscitelli were based solely on non-valid checks written abroad, the court found "no factor or linkage that would allow for the jurisdiction of the Quebec courts." *Id.* ¶ 21. Nonetheless, the Canadian Plaintiffs sought to invoke the court's jurisdiction through the "exceptional powers" granted by Section 3136 of the Civil Code of Quebec ("CCQ"). *Id.* ¶ 21.

Section 3136 provides as follows: "Even though a Quebec authority has no jurisdiction to hear a dispute, it may hear it, if the dispute has a sufficient connection with Quebec, where proceedings cannot possibly be instituted outside Quebec or where the institution of such proceedings outside Quebec cannot reasonably be required." CCQ § 3136; *accord* Canadian Decision ¶ 32. The court declined to accept jurisdiction under § 3136 as to Francoise and Piscitelli, finding that "nothing indicates that it would be impossible or even difficult to introduce an action in the United States for the unpaid cheques" against them. Canadian Decision ¶ 33.

(4)

After the Canadian Decision, plaintiffs herein brought this case against Francoise. The gist of the allegations in the instant complaint are not new. In essence, plaintiffs claim that Francoise issued sixteen checks through a non-existent corporation—San Remo—for the payment of tomatoes sold and delivered by plaintiffs. Plaintiffs also assert that the tomatoes were delivered to Francoise though her and Amiglio's "agent," Paesana, and that Francoise and Amiglio "exercised complete control" over Paesana. Compl. ¶ 7; *see also id.* ¶ 8. Thus, plaintiffs claim that Paesana followed Francoise's instructions in connection with the purchase of the tomatoes, including the method of payment. *See id.* ¶ 7. According to plaintiffs, Francoise issued the sixteen checks to Paesana with instructions to endorse them to the

favor of plaintiffs. Apparently, however, Francoise and Amiglio instructed plaintiffs not to negotiate the checks, upon the representation that Francoise would substitute the checks with a wire transfer. *See id.* ¶ 12. In reliance on that representation, plaintiffs claim that they never deposited or cashed the sixteen checks. However, they assert that Francoise never sent a wire transfer as promised. *See id.* ¶ 14. Accordingly, plaintiffs allege that Francoise is personally liable for the purchase price of the tomatoes, in accordance with the issuance of the sixteen checks. Plaintiffs further allege that Francoise actions were "wrongful, dishonest, inequitable and fraudulent and were committed in breach of a legal duty." *Id.* ¶ 21.

In a second count, plaintiffs allege that Francoise knew that San Remo was not a validly existing company and assert "on information and belief" that Francoise also knew that San Remo's bank account had insufficient funds to cover the checks. Plaintiffs claim that Francoise issued the checks to wrongfully induce plaintiffs to deliver additional goods but that she never intended to honor the payment of those goods. *See id.* ¶¶ 23–25. As relief, plaintiffs seek U.S. $1,428,527.00 for each count. *See id.,* First Count "Wherefore" clause; *id.,* Second Count "Wherefore" clause.

## Discussion

Defendant seeks to dismiss the complaint on the following grounds: (1) failure to specify fraud with particularity under Rule 9(b); (2) *forum non conveniens;* (3) failure to join an indispensable party under Rule 19; and (4) comity, collateral estoppel or res judicata. Oral argument in this case was held on March 13, 2002, with plaintiffs' counsel participating by telephone. At the oral argument, the decision with regard to defendant's first ground for dismissal—failure to comply with Rule 9(b)—was read into the record. The remaining three grounds for dismissal will be discussed *seriatim.*

### (1)

### *Forum Non Conveniens*

■ Defendant claims that Canada is a more appropriate forum to litigate this case and that she would "bear an overwhelming hardship" in defending this suit in the United States. Def.'s Mem. at 13. When deciding a motion to dismiss on the ground of *forum non conveniens,* "a district court enjoys wide discretion." *DiRienzo v. Philip Services Corp., et al.,* 294 F.3d 21, 27 (2d Cir.2002) (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 267, 70 L.Ed.2d 419 (1981)), *cert. denied sub nom. Deloitte & Touche LLP v. DiRienzo,* — U.S. —, 123 S.Ct. 556, 154 L.Ed.2d 442 (2002); *accord Iragorri v. United Techs. Corp.,* 274 F.3d 65, 72 (2d Cir.2001) (quotation marks omitted). "The 'first level of inquiry' in a *forum non conveniens* analysis is to determine what deference is owned a plaintiff's choice of forum." *DiRienzo,* 294 F.3d at 28 (quoting *Iragorri,* 274 F.3d at 73). Courts usually defer to a plaintiff's choice of forum; thus, " '[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.' " *Id.* (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)); *accord Iragorri,* 274 F.3d at 70–71 (same). Accordingly, the Second Circuit has ruled that "a court should begin with the assumption that a plaintiff's choice of forum will stand unless the defendant can demonstrate that reasons exist to afford it less deference." *DiRienzo,* 294 F.3d at 28 (discussing and citing *Iragorri,* 274 F.3d at 71).

■ In this case, foreign plaintiffs—companies operating in Italy—have filed suit in this court. When a plaintiff is foreign, its choice of a U.S. forum is enti-

tled to less weight than that of a domestic plaintiff. *See Iragorri,* 274 F.3d at 71 (citing *Piper,* 454 U.S. at 255–56, 102 S.Ct. at 265–66); *R. Maganlal & Co. v. M.G. Chemical Co.,* 942 F.2d 164, 168 (2d Cir. 1991) (same). "However, this reduced weight is not an invitation to accord a foreign plaintiff's selection of an American forum *no* deference. . . ." *R. Maganlal,* 942 F.2d at 168 (internal quotation marks and citations omitted). Instead, to determine the appropriate amount of deference, the Second Circuit has stated that "[t]he more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice." *Iragorri,* 274 F.3d at 71–72. In other words, the more it appears that a connection to the United States and considerations of convenience, and not reasons of forum-shopping, favor conduct of the lawsuit in the United States, the more difficult it is for a defendant to prevail on a motion to dismiss based on *forum non conveniens. See id.*

Plaintiffs herein have filed suit against a New York resident, residing in Brooklyn, alleging that defendant committed fraud and breach of contract in New York. In fact, plaintiffs' suit arises out of defendant's actions in this state (issuing checks) involving an allegedly nonexistent company bearing a New York address and maintaining a New York bank account. Accordingly, this case has a valid connection to New York and this court. *Cf. R. Maganlal,* 942 F.2d at 169 (finding New York had a significant interest in breach of contract action where contract was signed and negotiated in New York and party charged with breach was a New York corporation). Nonetheless, defendant emphasizes that plaintiffs have already chosen two foreign forums—namely, Italy and Canada—to litigate the underlying facts relating to the transactions set forth in the current complaint. Moreover, defendant argues that because plaintiffs in this action are alleging that she is a business partner and associate of her husband Amiglio—an allegation omitted from the Canadian Complaint—a timely amendment of the Canadian Complaint would have precluded the dismissal of plaintiffs' complaint against her in Canada.[4] These arguments are unpersuasive.

First, lest defendant forget why plaintiffs have filed suit in this court: It was Francoise who successfully argued that the

---

**4.** In fact, defendant goes to great lengths to distinguish or identify "contradictions" between the Canadian Complaint and the present complaint. Defendant then repeatedly argues that this case seeks an adjudication of a variety of issues against her that also involve some of the defendants in the Canadian litigation. A review of the two complaints, however, reveals no significant contradictions. In the Canadian Complaint, Canadian Plaintiffs alleged that Francoise issued checks through a non-existent company lacking sufficient funds to enable payment for goods. Even though the present complaint contains additional allegations that Amiglio and Francoise are partners and that Paesana is controlled, in part, by Francoise, the gravamen of the Canadian suit against Francoise is no different than the current suit. Significantly, the present complaint does not allege that Francoise was involved in placing fictitious orders through Paesana, that she rerouted goods towards the United States through the Port of Montreal, that she failed to obtain valid customs certificates or that she issued false custom certificates instead. These are the allegations currently before the Canadian courts and these are the allegations that the Canadian Court of Appeal found formed the bases for jurisdiction over Amiglio and Amko. *See* Canadian Decision ¶ 18; *see also id.* ¶¶ 12–18. By contrast, plaintiffs in this case seek adjudication of the isolated incident of issuing sixteen checks for payment of goods, which were issued on the account of an allegedly nonexistent company with insufficient funds to honor the checks.

Canadian courts could not exercise jurisdiction over her, and it was the Canadian Court of Appeal that ruled that "nothing indicates that it would be impossible or even difficult to introduce an action in the United States for the unpaid cheques." Canadian Decision ¶ 33. Moreover, contrary to defendant's argument, plaintiffs in the Italian litigation are not seeking payment for any outstanding invoices for goods sold and delivered, or alleging any fraud for the issuance of sixteen checks through a non-existent company, thereby rendering this case duplicative. Instead, the Italian litigation addresses the narrow issue of the export premium obtained from the European Union with the allegedly false custom certificates provided by Amiglio and his Canadian partner, Lavallee.

■ More importantly, the Second Circuit has stated that "[a] *forum non conveniens* motion cannot be granted absent an adequate alternative forum." *DiRienzo*, 294 F.3d at 29; *accord Iragorri*, 274 F.3d at 73; *see also Iragorri*, 274 F.3d at 72 ("One of the factors that necessarily affects a plaintiff's choice of forum is the need to sue in a place where the defendant is amenable to suit."). Here, plaintiffs literally have no alternative forum other than to adjudicate before this court. Indeed, the Canadian Court of Appeal has already decided that no jurisdiction exists over Francoise with regard to the issuance of the non-valid checks. Having successfully obtained a dismissal of plaintiffs' case in the Canadian court, defendant now argues that Canada is a more appropriate forum in which to adjudicate these issues. Defendant cannot have it both ways. Even if plaintiffs could still litigate against Francoise in Canada, "[a] defendant does not carry the day simply by showing the existence of an alternative forum." *Iragorri*, 274 F.3d at 75. Instead, "[t]he action should be dismissed only if the chosen

forum is shown to be *genuinely inconvenient* and the selected forum significantly preferable." *Id.* at 75–76 (emphasis added). In fact, defendant's current motion raises a question as to her underlying motive. *See DiRienzo*, 294 F.3d at 29; *see also Iragorri*, 274 F.3d at 75 ("Courts should be mindful that, just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants may move for dismissal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of forum-shopping reasons."). Thus, since plaintiffs really have no alternative forum in which to litigate their case, there is little evidence that they chose to bring their case in New York for forum shopping reasons.

■ Even assuming, *arguendo*, that Canada is an appropriate alternative forum, because plaintiffs' choice of forum is entitled to some weight, defendant must show that the balance of private and public conveniences overcome the presumption in favor of plaintiffs' choice and weigh heavily in favor of trial in the alternative forum. *See R. Maganlal*, 942 F.2d at 167–68. Therefore, "[t]he next step in assessing convenience is to balance the public and private interests factors articulated in *[Gulf Oil Corp. v.] Gilbert.*" *DiRienzo*, 294 F.3d at 29 (discussing *Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)).

## A. Private Interest Factors

The *Gilbert* Court set forth the following private interests to be considered in deciding whether factors of convenience favor trial in an alternative forum: "(1) ease of access to evidence; (2) availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of willing witness attendance; (4) if relevant, the possibility of view of premises; and (5) all other factors that might make trial quicker

and less expensive." *DiRienzo*, 294 F.3d at 29–30 (citing *Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843); *accord Iragorri*, 274 F.3d at 73–74.

The precise issue that is likely to be tried in this case is the validity of a series of checks issued through an allegedly non-existent company for payment of goods and alleged attendant misrepresentations. Thus, the proof or evidence necessary to establish the gist of the allegations in the complaint are the checks, which are documentary in nature and located in New York. *See R. Maganlal*, 942 F.2d at 168 (emphasizing in *Gilbert* private interest analysis that documentary evidence and witnesses relevant to central issue were located in U.S. and not India, the alternative forum). Since Francoise signed the checks, only she can testify with regard to their issuance and presentation. Accordingly, Francoise's presence in New York makes this state an appropriate and extremely convenient venue. Other than Amiglio and Piscitelli—both Brooklyn residents—none of the other defendants in the Canadian ligation are alleged to have anything to do with San Remo or the day-to-day management of its business.[5]

Moreover, even if Canadian witnesses are necessary, that fact does not favor trial in Canada. Indeed, because Amiglio—and possibly Piscitelli—are relevant witness in this case, "[w]herever the trial takes place, witnesses will be forced to travel to provide testimony." *Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 46–47 (2d Cir. 1996) (quotation marks omitted). In this regard, the Second Circuit in *DiRienzo* noted that air travel is conveniently available for Canadian witnesses testifying in New York and that "[s]uch travel today is not burdensome in terms of cost or time." 294 F.3d at 30. Francoise does not state how any potential witness in Canada or elsewhere can possibly pose a problem of undue expense.

In addition, any testimony that Francoise may need from witnesses whose attendance cannot be compelled can be obtained by video deposition through the use of letters rogatory. *See DiRienzo*, 294 F.3d at 30 (citing *Overseas Programming Companies v. Cinematographische Commerz–Anstalt*, 684 F.2d 232, 235 (2d Cir. 1982)); *R. Maganlal*, 942 F.2d at 169 (citations omitted). Lastly, despite defendant's protestations that she is burdened with defending a lawsuit in the United States that should include necessary parties, joinder or an alleged necessary party is not a compelling countervailing consideration established by *Gilbert* that defeats plaintiffs' good-faith choice of this forum.[6]

---

5. Interestingly, there is no mention of Piscitelli in the present complaint, and plaintiffs submit that besides Francoise, Amiglio is the only other relevant witness in this case. However, the Canadian Complaint intimates that Piscitelli may have signed some of the sixteen challenged checks. *See* Canadian Compl. ¶ 8. In fact, as an exhibit to her motion papers, defendant submitted numerous checks written to Paesana, some of which are signed by Piscitelli. *See* Def.'s Supplemental Aff., Ex. I. In any event, the necessity of testimony from Piscitelli, a Brooklyn resident, does not support defendant's claim that trial in Canada is more convenient than trial in New York.

6. In fact, defendant's argument is premised on a misapprehension that the current litigation seeks to litigate the same specific issues that are pending in the Canadian litigation. However, this case addresses a rather narrow issue, namely Francoise's liability with regard to the sixteen checks she purportedly wrote on the account of a non-existent company. As noted earlier, this case does not allege that Francoise was involved in defrauding the Italian government by obtaining false Canadian customs certificates or that Francoise is liable for the remaining balance of the purchase price for the tomatoes sold and delivered by Giaguaro and Conserviera.

■ Lastly, Francoise does not articulate practical problems so weighty that they favor trial in Canada. Although Francoise emphasizes that a related case is pending in Canada, the mere fact that there are parallel proceedings in New York and Canada predicated on similar facts does not compel dismissal for *forum non conveniens*. *See DiRienzo*, 294 F.3d at 31 ("[T]he existence of related litigation is not one of the factors enumerated by *Gilbert*.") (citing *Guidi v. Inter–Continental Hotels Corp.*, 224 F.3d 142, 148 (2d Cir.2000)); *see also Segal*, 89 F.3d at 47. Indeed, defendant does not articulate why the pendency of the Canadian litigation will make it more expensive or difficult for plaintiffs to proceed in New York with their suit against Francoise, a New York resident. ·*See Segal*, 89 F.3d at 47. Thus, on the evidence presented, the balance of *Gilbert* factors does not strongly favor the defendant; accordingly, Second Circuit precedent instructs that plaintiffs' choice of forum should not be disturbed. *See DiRienzo*, 294 F.3d at 30–31.

**B. Public Interest Factors**

■ The *Gilbert* Court also established the following public interest factors to be considered in deciding whether factors of convenience favor trial in an alternative forum: "(1) administrative difficulties associated with court congestion; (2) the unfairness of imposing jury duty on a community with no relation to the litigation; (3) the 'local interest in having localized controversies decided at home'; and (4) avoiding difficult problems in conflict of laws and the application of foreign law." *DiRienzo*, 294 F.3d at 31 (quoting *Gilbert*, 330 U.S. at 509, 67 S.Ct. at 843). Neither party submits that there are administrative difficulties associated with court congestion; thus, this factor does not weigh in favor of either party.

Plaintiffs submit that New York has a connection to this case. Indeed, as stated above, plaintiffs are suing a New York resident, alleging fraud and breach of contract relating to actions taken by defendant in New York, involving an allegedly non-existent corporation bearing a New York address and maintaining a New York bank account. New York's interests clearly outweigh any general interest Canada may have in this case, as Canada is involved only to the extent that another company was established there as a conduit for the alleged fraud. Moreover, when an alleged fraud had been committed in New York, the New York community has an interest in considering the claim.

■ Defendant notes, however, that in the Canadian Complaint, Canadian Plaintiffs (which include plaintiffs herein) assert that Italian law governs the relevant contract(s). Defendant appears to suggest that Italian law will govern the issues in this case. However, defendant's reply memorandum asserts a contrary position; indeed, defendant's memorandum sets forth a rather extensive argument that plaintiff's complaint fails under New York commercial law. In any event, "it is well-established that the need to apply foreign law is not alone sufficient to dismiss under the doctrine of *forum non conveniens*." *R. Maganlal*, 942 F.2d at 169 (citations omitted).

Moreover, as defendant argues that Canada is the more appropriate forum to litigate this case, the interest in avoiding the application of Italian law—even if the application of such law will be necessary—does not favor either forum. Hence, the public interest factors actually favor a U.S. forum over a Canadian forum. Thus, defendant has not shown (1) that there is an adequate alternative forum and (2) that even if Canada is an adequate alternative forum, that "a trial in the United States

would be so oppressive and vexatious to [her] as to be out of all proportion to plaintiffs' convenience." *DiRienzo*, 294 F.3d at 30 (citing *Koster v.(Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 831–32, 91 L.Ed. 1067 (1947)). Accordingly, defendant's motion to dismiss on the grounds of *forum non conveniens* is denied.

### (2)

### Failure to Name a Necessary Party

■ Defendant argues that Amiglio—allegedly Francoise's partner—is necessary and indispensable to this litigation, as well as Paesana and Lavallee. Accordingly, defendant seeks to dismiss the complaint on this alternative ground. Rule 19 sets forth a two-step analysis for determining whether a court must dismiss an action for failure to join an indispensable party. First, the court must ascertain whether the absent party is "necessary" within the meaning of the rule, *i.e.*, whether the absent party should be in the suit. *See Viacom Int'l Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir.2000) (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 124, 88 S.Ct. 733, 745, 19 L.Ed.2d 936 (1968) (quotation marks omitted)). The Supreme Court has found that " '[p]ersons having an interest in the controversy, and who ought to be made parties ... are commonly termed necessary parties ....' " *Patterson*, 390 U.S. at 124, 88 S.Ct. at 733 (quoting *Shields v. Barrow*, 58 U.S. (17 How.) 130, 139, 15 L.Ed. 158

(1854)). Rule 19(a) states that an absent party should be joined, if possible, when: (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impeded the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a).

Only if a party qualifies as necessary under Rule 19(a) does a court need to determine whether the party's absence validates dismissal under Rule 19(b). *See Viacom*, 212 F.3d at 724 (citing *Assoc. Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1123 (2d Cir.1990)). However, if the court determines that a party is necessary under Rule 19(a), and joinder of the absent party is not feasible due to jurisdiction or other reasons, the court must then determine whether the party is "indispensable." *Id.* at 725 (citations omitted). If the court decides that a party is indispensable, the court must dismiss the action as mandated by Rule 19(b).[7] *See id.* (citing *ConnTech Dev. Co. v. Univ. of Conn. Educ. Properties, Inc.*, 102 F.3d 677, 681–82 (2d Cir.1996)).

■ Defendant asserts that the thrust of the current complaint is that she and

---

**7.** Rule 19(b) states:

[T]he court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b).

Amiglio—who is absent from this litigation—are liable to plaintiffs under an "apparent claim of piercing the corporate veil," and, therefore, it would be "inequitable and unfair" not to include Amiglio in this lawsuit, as well as Lavallee and Paesana. However, defendant has not demonstrated how these absent parties are necessary for complete relief to be accorded between the current parties. In fact, defendant appears to misconstrue the allegations in the complaint. Although the complaint alleges that Francoise is the partner of Amiglio, one of the principals with whom the plaintiffs entered into a series of agreements to sell canned peeled tomatoes, this action seeks damages against Francoise *personally* for the allegedly fraudulent issuance of sixteen checks drawn on the account of San Remo. Thus, it does not appear that Amiglio's presence in this action is necessary to allot relief between Francoise and plaintiffs. Even if Amiglio is also liable to plaintiffs for the amount of damages asserted against Francoise, this fact does not support a finding that he is a necessary or indispensable party. Indeed, it is long established in the Second Circuit that a joint obligor is not an indispensable party to an action against one of the other obligors. *See Greenleaf v. Safeway Trails*, 140 F.2d 889, 890–91 (2d Cir.1944).

Moreover, defendant does not assert what interest of Amiglio's, if any, would be prejudiced by his absence in this litigation. In addition, Amiglio has not appeared in this action and asserted that his interest cannot be protected without his presence as a party. *See Johnson v. The Smithsonian Inst.*, 189 F.3d 180, 188 (2d Cir.1999). As alleged business partners, the interests of Francoise and Amiglio are the same, and there is no indication that Francoise will litigate this case with any less vigor in Amiglio's absence. *See Smith v. Mandel*, 66 F.R.D. 405, 411 (D.S.C.1975).

■ In addition, Francoise, not Amiglio, is directly implicated in the complaint as the active, in fact primary, participant in this action. *See Viacom*, 212 F.3d at 725. Indeed, the crucial facts in this case pertain to Francoise, namely her actions in writing checks on San Remo's account to cover invoices for tomatoes sold and delivered. *See Freedom N.Y., Inc. v. U.S.*, 86–CV–1363, 1986 WL 6163 (S.D.N.Y. May 27, 1986). The only fact in this lawsuit pertaining to Amiglio is that he was one of the principals that plaintiffs contracted with to sell canned peeled tomatoes. *See Compl.* ¶ 4. However, even if it may be necessary for Amiglio to testify in this action regarding the contract with plaintiffs herein, a party is not necessary for Rule 19 purposes merely because the plaintiff needs to obtain evidence from the party. *See Johnson*, 189 F.3d at 188–89 (2d Cir.1999). In fact, a party is not necessary even if the defendant would have to defend the absent party's actions at trial. *See id.*

■ Nonetheless, defendant asserts that inconsistent allegations in the Canadian Complaint and the current complaint jeopardize her not only in terms of inconsistent relief but also because of the "dubious distinction in being liable in the [U.S.] lawsuit while the Defendants in the Canadian litigation are not found liable for the same activities involving the same transaction." Def.'s Mem. at 14. However, a party is not necessary to an action merely because a parallel action is being brought against an absent party that may result in different outcomes. As stated above, the Canadian lawsuit addresses different claims than the claims present in this suit. Although both lawsuits assert claims for goods sold and delivered, defendant does not indicate how or why she is unable to assert any defenses to this claim that Amiglio can assert in the Canadian lawsuit.

Therefore, there is no substantial risk that Francoise will be subject to inconsistent obligations by reason of any claimed interest of Amiglio's (or Paesana's or Lavallee's) if these parties are not joined in the present suit. Even if Amiglio is a necessary party and wanted to assert a claim to protect any purported interest in this case, it is not necessary to continue this analysis, or to dismiss plaintiffs' complaint, because Amiglio can join this case without destroying the court's subject matter jurisdiction. *See Viacom,* 212 F.3d at 726–27 (finding that a fourth party defendant may bring a claim against a plaintiff, even if the defendant's presence would destroy diversity jurisdiction; plaintiffs may not bring any claims or counterclaims against fourth party defendant). Thus, defendant's motion on this ground is denied.

### (3)

### Comity, Res Judicata and Collateral Estoppel

■■■■ As a last alternative argument, defendant argues that the principals of comity, res judicata or collateral estoppel apply in this case. Comity is "the recognition which one nation allows within its territory to the ... judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Hilton v. Guyot,* 159 U.S. 113, 164, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895). However, defendant does not indicate what act of the Canadian courts that she wishes this court to recognize. All defendant asserts is that plaintiffs chose to file a complaint in a Canadian forum and that they should be precluded from asserting in this case "inconsistent and contrary theories of fact and law" not previously asserted. Defendant further argues that she was subjected to the "expense and harassment of

having her successfully seek dismissal of the Canadian Complaint on the basis of jurisdiction which has been rendered meaningless and ineffective by virtue of the present complaint." Def.'s Mem. at 18. Defendant's argument is wholly meritless; defendant cannot plausibly assert that this court should in any way be bound by a decision of the Canadian courts dismissing a complaint against her on jurisdictional grounds. Indeed, defendant's argument in this case sounds like a broken record, and her argument for res judicata and collateral estoppel is similarly frivolous.

■■■■ The Second Circuit explained the doctrines of res judicata and collateral estoppel in *United States v. Alcan Aluminum Corp.,* 990 F.2d 711 (2d Cir.1993):

Res judicata, or claim preclusion, means simply that *when a judgment is rendered on the merits,* it bars a second suit between the same parties or their privies based on the same cause of action or claims .... Under collateral estoppel, or issue preclusion, the second suit is upon a different claim or cause of action. This doctrine's fundamental notion is that *an issue of law or fact actually litigated and decided* by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties of their privies.

*Id.* at 719 (internal citations omitted) (emphasis added). In this case, no decision has been rendered by the Canadian courts on the merits of this case, thereby precluding the application of res judicata. Moreover, since the Canadian courts have only addressed issues of jurisdiction, defendant cannot credibly assert that plaintiffs are seeking to relitigate an issue of law or fact previously decided. Thus, defendant's motion to dismiss on this final ground is denied.

## Conclusion

The mere fact that defendant is bitter that she successfully defeated the jurisdiction of the Canadian courts but that she must now address the merits of the claims against her in the United States is not grounds for dismissing this claim under any theory of law. Accordingly, for the reasons stated above, and on the record of oral argument, defendant's motion to dismiss is denied.

SO ORDERED.